# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

### SAVANNAH DIVISION

GREGORY STUCKEY,          )
                          )
    Plaintiff,            )
                          )
v.                        )          Case No.  CV405-216
                          )
DANNIE THOMPSON, Warden, et al., )
                          )
                          )
    Defendants.           )

## REPORT AND RECOMMENDATION

Defendants Thompson, Deal, Allen, and Santiago have filed a motion for summary judgment. Doc. 4. Plaintiff has responded in opposition to defendants' motion. Doc. 7. For the following reasons, defendants' motion should be GRANTED in part and DENIED in part.

## I.    BACKGROUND

Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 alleging that on September 3, 2005, while he was incarcerated at Coastal State Prison in Garden City, Georgia, inmate Holt sexually assaulted him while he was asleep. Doc. 1. Plaintiff immediately reported the assault to Officer

Santiago, who reported the incident to his supervisor, Lt. Allen.  Doc. 7, Ex. A, Plf.'s Aff.  After an investigation of the incident, Allen told plaintiff that he would be placed in disciplinary solitary confinement.  Id.  When plaintiff protested this reassignment, Allen ordered plaintiff and inmate Holt to return to their cell together.  Id.   Later that afternoon, plaintiff was transported to Memorial Hospital in Savannah for medical examinations and treatment.  Id.  Following this evaluation, plaintiff was returned to the prison.  Id.

Later that evening,  Allen ordered plaintiff to be placed in disciplinary solitary confinement.  Id.  Plaintiff protested Allen's orders by sitting on the floor.  Id.  Allen then called for back-up officers to assist in transporting plaintiff to solitary confinement.  Doc. 7, Ex. B.  Plaintiff alleges that Allen ordered these additional officers, named as defendants John Does 1-8 in the complaint, to attack and beat him.  Id.  The John Doe defendants then violently assaulted plaintiff with their fists, kicking, kneeing, and choking him in the process.  Id.  During the attack, plaintiff suffered a broken arm and informed the officers of his injury.  He claims that the officers said, "you deserve it" and proceeded to drag him to disciplinary solitary

confinement without providing any medical treatment for his injuries. Id.
A nurse checked on plaintiff once he was placed in solitary confinement and
told defendant Allen that plaintiff's arm was broken, but Allen said, "Let
him suffer." Id. On September 4, 2005, a nurse checked plaintiff's arm and
shoulder and recommended that plaintiff be transferred to the prison
medical facility. Id. After the prison medical staff examined plaintiff's
injuries, he was transferred to the Memorial Hospital where x-rays were
taken. Id. The x-rays indicated that plaintiff had a broken arm and a
dislocated shoulder, and doctors performed emergency surgery on plaintiff's
arm and shoulder to repair his injuries. Id.

Plaintiff claims that defendants Thompson and Deal were deliberately
indifferent to a substantial risk of serious harm to plaintiff's safety by
failing to properly classify inmate Holt and that defendant Santiago was
deliberately indifferent in failing to protect plaintiff from the sexual attack.
Docs. 1, 7. Plaintiff also claims that defendant Allen violated his rights by
ordering the John Doe defendants to attack him. Id. He alleges that the
use of extreme and excessive force not only violated the United States
Constitution and the Georgia Constitution, but that the force used

3

constituted "torture" within the meaning of 18 U.S.C. § 2340, the statute

codifying United Nations Convention Against Torture.[1]   Id.


## II.   APPLICABLE LEGAL PRINCIPLES

### A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to

enter summary judgment where the record, taken as a whole, establishes

"that there is no genuine issue of material fact and that the moving party

is entitled to judgment as a matter of law."   "An issue of fact is 'material'

if it might affect the outcome of the case under the governing law. . . . It is

'genuine' if the record taken as a whole could lead a rational trier of fact to

find for the non-moving party."   Baker v. Sears, Roebuck & Co., 903 F.2d

1515, 1518 (11th Cir. 1990)(citations omitted).

---

[1] 18 U.S.C. §§ 2340, *et seq.*, is a criminal statute that provides for criminal prosecution where an alleged offender who is a national of the United States or is present in the United States commits the offense of torture "outside the United States." 18 U.S.C. § 2340A.  Here, plaintiff has made no allegations of torture occurring outside the United States.  Furthermore, there is nothing in the statutory scheme that states an intent to create a private right of action.  To the contrary, Congress gives a clear indication that it never intended to create an individual right to sue.  Congress provided, "[n]othing in this chapter shall be construed as precluding the application of State or local laws on the same subject, nor shall anything in this chapter be construed as creating any substantive or procedural right enforceable by law by any party in any civil proceeding."  18 U.S.C. § 2340B.  This statute, therefore, has no applicability to this action.

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Products Div., 932 F.2d 1384, 1387 (11th Cir.), cert. denied, 502 U.S. 925 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911

F.2d 1573, 1577 (11th Cir. 1990).  The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties.  Baker, 903 F.2d at 1518.


**B.     Section 1983**

Section 1983 provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under the color of state law.  42 U.S.C. § 1983.  In order to establish a claim under § 1983, plaintiff must show that defendants acted under the cloak of state authority when they participated in the conduct alleged by plaintiff and that their actions deprived plaintiff of a right or rights secured by the United States Constitution or other federal laws.  Violations of state statutes or tortious conduct under state law do not constitute the type of injury for which § 1983 provides a remedy.

Section 1983 is not a source of rights, but rather a means of vindicating federal rights.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  In analyzing a § 1983 claim, a court must first "identify the specific constitutional right allegedly infringed."  Id.; Graham v. Connor, 490 U.S.

386, 394 (1989).   Plaintiff alleges in his complaint that defendants Thompson, Deal, Allen, and Santiago acted with deliberate indifference to a substantial risk of harm posed to him by another inmate, and that defendant Allen and the eight John Doe defendants used excessive force against him.  Docs. 1, 7.

## III.  ANALYSIS

### A.    Exhaustion of Administrative Remedies

As an initial matter, defendants contend that plaintiff failed to exhaust his administrative remedies prior to filing his complaint, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Doc. 5.  Defendants claim that under the grievance procedure in place at Coastal State Prison, inmates are required to file a grievance within five days of the grieved event in order for the grievance to be considered timely, and here plaintiff filed his informal grievance ten days after the grieved event.  Id.  Plaintiff alleges that the Standard Operating Procedure in place at the prison allowed for a waiver of the time limits and required an inmate to be notified if and when his grievance was rejected.  Doc. 7.  He alleges

that he filed an informal and formal grievance and points out that his informal grievance, although filed out of time, was accepted by his counselor. Id., Exs. F, G.  Plaintiff also claims that after the Warden responded to his formal grievance, he filed an appeal.  Id., Ex. H.

The United States Supreme Court has recently reiterated the mandatory nature of the exhaustion requirement. See Porter v. Nussle, 534 U.S. 516, 523-24 (2002) (mandatory exhaustion requirement applies to all inmate suits about prison life). Furthermore, the PLRA "requires proper exhaustion." Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006). An inmate must "us[e] all steps" in the administrative process and comply with any administrative "deadlines and other critical procedural rules" before exhaustion is proper. Id. at 2385-86 (internal quotation omitted). Thus, if an inmate has filed an "untimely or otherwise procedurally defective administrative grievance or appeal," he has not properly exhausted his administrative remedies. Id. at 2382; see also Lambert v. United States, 198 Fed. Appx. 835, 840 (11th Cir. 2006) (proper exhaustion requires filing grievance "under the terms of and according to the time set by BOP regulations").  If a prisoner fails to complete the administrative process or

falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005); Simpson v. Holder, 2006 WL 2430001 (11th Cir. Aug. 23, 2006) (recognizing that the PLRA exhaustion requirement contains a procedural default provision). "[A] Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures'" in order to exhaust his administrative remedies properly. Salas v. Tillman, 162 Fed. Appx. 918, 920 (11th Cir. 2006) (quoting Johnson, 418 F.3d at 1159).

The record indicates that plaintiff filed an informal grievance on September 13, 2005. Doc. 7, Ex. F. The prison counselor accepted plaintiff's grievance despite its untimeliness. Id. The informal grievance did not resolve plaintiff's complaint, and the prison counselor issued a formal grievance form to plaintiff on September 20, 2005, which plaintiff returned the same day. Id., Doc. G. The Warden responded to plaintiff's grievance on September 28, 2005, indicating that the issue had been referred to internal affairs for further investigation. Id. Plaintiff filed an appeal on October 17, 2005. Id., Doc. H. While defendants claim that plaintiff's

informal grievance was filed out of time, there is no evidence that it was rejected or denied as untimely.  The Warden's response to plaintiff's formal grievance does not indicate that his grievance was denied as untimely and, in fact, his response indicates that plaintiff's grievance was accepted for further investigation.  See Doc. 7, Ex. G.  Plaintiff also submitted an appeal of the Warden's decision.  Id., Doc. H.  Plaintiff has therefore exhausted his administrative remedies as required under § 1997e(a).  The Court will now address the merits of defendants' motion.

## B.    Qualified Immunity

Defendants assert that summary judgment should be granted in their favor on plaintiff's claims because they are entitled to qualified immunity.[2] Doc. 5.   Qualified immunity shields government officials performing

---

[2] Defendants also assert that they are entitled summary judgment because, to the extent plaintiff has sued them in their official capacities, they are immune under the Eleventh Amendment. Doc. 5. Plaintiff states in his complaint that he is bringing this action against defendants "in their individual capacities." See Doc. 5, ¶¶ 25, 26. The Court assumes, therefore, that plaintiff is not suing defendants in their official capacities. However, to the extent that plaintiff does intend to sue defendants in their official capacities, it should be noted that, as state officials, defendants are absolutely immune from suit for damages in their official capacities. Farred v. Hicks, 915 F.2d 1530, 1532 (11th Cir. 1990) (government officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). The doctrine of qualified immunity "'ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful.'" Hope, 536 U.S. at 739 (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)).

The court determines whether a defendant is entitled to qualified immunity as a matter of law, Mitchell v. Forsyth, 472 U.S. 511, 528 (1985), and the applicability of qualified immunity "should be resolved at the earliest possible stage of a litigation." Anderson, 483 U.S. at 646 n. 6. For government officials to be entitled to qualified immunity, they must show that they were acting within the scope of their discretionary authority when the alleged unconstitutional act occurred. Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003); Vinyard v. Wilson, 311 F.3d 1340, 1346 (2002).

Once government officials have established that they were acting within the scope of their discretionary authority, the burden then shifts to

the plaintiff to demonstrate that qualified immunity is inappropriate. Vinyard, 311 F.3d at 1346. The Supreme Court has established a two part analysis for making this determination. Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003) (citing Saucier, 533 U.S. at 201). Viewing the facts in the light most favorable to the plaintiff, the Court must first determine whether a defendant's conduct violated a constitutional right. Id. If a violation of a constitutional right is sufficiently alleged in the complaint, the court must then assess whether that right was clearly established at the time of the violation. Id.


1. *Deliberate Indifference to a Risk of Harm*

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). "When prison officials become aware of a threat to an inmate's health and safety, the Eighth Amendment's proscription against cruel and unusual punishment imposes a duty upon those officials to provide reasonable protection." Brown v. Hughes, 894 F. 2d 1533, 1537 (11th Cir.), cert. denied, 496 U.S. 928 (1990). Specifically,

"prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." <u>Farmer</u>, 511 U.S. at 833 (citations omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under § 1983, however." <u>Brown</u>, 894 F.2d at 1537 (citing <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986)); <u>Hendricks v. Coughlin</u>, 942 F.2d 109, 113 (2d Cir. 1991) ("Proof of mere negligence will not give rise to a constitutional violation.").  Before the tort can be raised to constitutional stature, the official's conduct must manifest "conscious or callous indifference to a prisoner's rights." <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986); <u>Gullate v. Potts</u>, 654 F.2d 1007, 1012 (5th Cir. 1981); <u>see Morgan v. District of Columbia</u>, 824 F.2d 1049, 1057-58 (D.C. Cir. 1987). Prison officials are not held liable for every attack by one inmate upon another, <u>Zatler</u>, 802 F.2d at 400, nor are they guarantors of a prisoner's safety. <u>Popham v. City of Talladega</u>, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. <u>Brown</u>, 894 F. 2d at 1537.

Thus, "[a]n Eighth Amendment violation will occur when a

13

risk of serious harm, of which the official is aware, exists and the official does not 'respond[] reasonably to the risk." Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001) (quoting Farmer, 511 U.S. at 843).  To survive a motion for summary judgment on an Eighth Amendment claim brought pursuant to § 1983, plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).  To establish deliberate indifference, plaintiff must demonstrate that the official "[knew] of and [disregarded] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Moreover, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Id. at 838; see also Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003) (plaintiff must establish that defendant had a subjective awareness of a substantial risk of serious physical threat to plaintiff in order to state a cognizable Eighth Amendment claim).

Defendants claim that they are protected by qualified immunity. Because defendants were acting within the scope of their discretionary authority when they housed plaintiff in the same cell as inmate Holt, the burden shifts to plaintiff to prove that defendants violated a constitutional right. <u>Dalrymple</u>, 334 F.3d at 995. Plaintiff, however, has failed to offer any evidence in the instant case that defendants knowingly disregarded an excessive risk to his safety prior to the sexual assault. Plaintiff has failed to demonstrate that prior to the assault defendants Thompson, Deal, Allen, or Santiago had any reason to believe that plaintiff was in danger of being assaulted by Holt. The evidence shows that plaintiff had never been assaulted by Holt in the past nor made a request for protective custody. Furthermore, there is no evidence that plaintiff had complained of a possible assault by Holt or informed defendants of any threats made by Holt prior to the incident on September 3, 2005.

Plaintiff claims that Santiago was "deliberately indifferent as the responsible dorm officer in failing to protect [p]laintiff from sexual attack by inmate Holt." Doc. 7. Prior to the assault, defendant Santiago told inmate Holt to "put some clothes on before I think you are doing something

wrong." Doc. 7, Ex. D, Jackson Witness Statement.[3]  Plaintiff, however, has provided no evidence that Santiago knew that Holt had sexually assaulted another inmate or that Holt had demonstrated dangerous propensities that should have alerted Santiago that Holt was a danger to plaintiff or other inmates.  Furthermore, plaintiff has failed to offer any evidence that he made any complaints to Santiago before the assault that he feared for his safety.  An officer must have been aware of a "particularized threat of fear felt by [p]laintiff" in order to have the subjective knowledge necessary for a finding of liability. Carter, 352 F.3d at 1350 (defendants' awareness that plaintiff's cell mate was a "problem inmate" who was prone to violence and who had stated that plaintiff would assist in the cellmate's staged hanging "one way or another," was insufficient to establish Eighth Amendment liability).  Here, plaintiff has failed to establish that any defendant had knowledge of a particularized threat to plaintiff's safety prior to the assault; therefore, defendants lacked the requisite subjective awareness necessary for a finding of liability.  Because plaintiff has failed to establish a

---

[3] Lawrence Jackson, an inmate at Coastal State Prison housed across the hall from plaintiff, was a witness to the events and conditions surrounding plaintiff's cell prior to and after the assault. Doc. 7, Ex. D. Plaintiff submitted Jackson's witness statement in support of his response to defendants' motion for summary judgment.

constitutional violation, defendants are entitled to qualified immunity on plaintiff's deliberate indifference claim.[4]

Plaintiff also claims that Warden Thompson and Deputy Warden Deal "deliberately departed from the minimum safe security, staff conduct, and other security measures at Coastal State Prison."   Doc. 1.   Plaintiff, however, fails to attach a copy of any of the prison's policies or procedures that he claims were violated in the instant case or demonstrate how the procedures at the prison were insufficient on the day of assault or at any other time.   Without evidence to support his claims, plaintiff's claims against defendants Thompson, Deal, and Santiago should be DISMISSED.[5]

---

[4] In his response to defendants' motion for summary judgment, plaintiff seems to assert that by instructing plaintiff and Holt to return to their dorm together after the assault, defendant Allen was deliberately indifferent to a substantial risk to plaintiff. Doc. 7.   Plaintiff, however, has not shown that inmate Holt further assaulted or threatened him (or any other inmate) following the sexual assault.

[5] To the extent plaintiff attempts to hold defendants Thompson and Deal liable based on their positions as jail administrators, his claims likewise fail.   Claims brought pursuant to § 1983 cannot be based on theories of vicarious liability or respondeat superior. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Dep't of Social Servs. of N.Y., 436 U.S. 658, 691 (1978).   Rather, the plaintiff must demonstrate either that the individual defendant directly participated in the alleged constitutional deprivation or that there is some other causal connection between the official's acts or omissions and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam). Such a causal connection may be established by showing that a supervisory official implemented or allowed to continue an official policy or an unofficially adopted policy or custom under which the violation occurred. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985).

## 2. Excessive Force

Plaintiff has alleged that defendant Allen ordered eight John Doe officers to attack and beat him, that this use of force was excessive under the circumstances, and that the use of force caused him "great pain and suffering as well as serious physical injury and disability." Doc. 1.

As an initial matter, a plaintiff may use a fictitious name such as "John Doe" to denote a defendant where the defendant's identity may be uncovered through discovery. Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992). However, where a plaintiff fails to discover the identity of John Doe defendants despite adequate time to do so, claims against such defendants should be dismissed. HMK Corp. v. Walsey, 637 F. Supp. 710, 714 n.4 (E.D. Va. 1986) (citing Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982)); see also Stratton v. City of Boston, 731 F. Supp. 42, 45 (D. Mass. 1989) (claims against "certain unknown officers" dismissed where

---

In plaintiff's response to defendants' motion for summary judgment, plaintiff contends that defendants Thompson and Deal's "pattern and practice of beating restrained inmates is a de facto punishment policy." Doc. 7. Plaintiff, however, offers no evidentiary support for this contention, as required by Rule 56, and on a motion for summary judgment such unsubstantiated assertions do not create an issue of fact. Plaintiff has therefore failed to establish a causal connection between his alleged constitutional deprivations and any policies, customs, or conduct of these defendants.

plaintiffs could have obtained names of police officers on duty at time of allegedly offensive conduct). In this case, plaintiff has had more than ample time and opportunity to discover the identities of the John Doe defendants. Plaintiff, however, has failed to amend his claims to include the identities of these unnamed defendants. Thus, his claims against all John Doe defendants should be DISMISSED.

In considering a claim that a prison guard used excessive force against a prisoner, the "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). To determine whether an application of force was applied maliciously and sadistically to cause harm the court must look at several factors including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response." Id. at 7 (internal citations omitted). Although the use of excessive physical force may violate the Eighth Amendment prohibition against cruel and unusual punishment even when the inmate does not suffer "serious injury," it is nevertheless permissible to view the extent of

the injury suffered as suggesting whether the force used was appropriate under the circumstances.  Id. at 7, 9-10 (de minimis uses of force are excluded from constitutional recognition).  Furthermore, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002).

In terms of qualified immunity, defendant Allen was acting within the scope of his discretionary authority in directing that plaintiff be transferred to solitary confinement and in ordering correctional officers to remove plaintiff from his cell against his will.  The burden then shifts to plaintiff to demonstrate that Allen's conduct violated a constitutional right and that the right was clearly established at the time of the violation.  Dalrymple, 334 F.3d at 995.  It is settled that "[t]he use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution." Skrtich, 280 F.3d at 1301 (citing Hudson, 503 U.S. at 9). The only question then, is whether defendant Allen's conduct, considered in the light most favorable to plaintiff, violated this constitutional right. See Saucier, 533 U.S. at 201.

Defendants argue that plaintiff has failed to prove that defendants used excessive force in violation of the Eighth Amendment. Doc. 5. In his complaint, plaintiff alleges that defendant Allen ordered eight unnamed officers to attack and beat him. Doc. 1. In response to defendants' summary judgment motion plaintiff has submitted a witness report which states:

> Lt. Allen told me I had to go to G-Building. I sat down on the floor at medical and told him I was not going to G-Building because I had not done anything. Lt. Allen then radioed for back up officers. After I again refused to get up off the floor, Lt. Allen ordered his officers to beat me. There were between 8 to 12 officers. The officers attacked me all at once. They beg[an] hitting me with their fists, kicking me, kneeing me and choking me. I heard something in my left arm pop. I beg[an] to yell, "you have broke my damn arm!" The officers said "you deserve it!" After my arm had been broken . . . I was dragged to the elevator and then to G-Building.

Doc. 7, Ex. B. Plaintiff has also submitted a sworn affidavit which reiterates the above claim. Id. at Ex. A.

Defendants, on the other hand, claim that plaintiff struggled with prison officials and "[a]ny alleged injuries by [p]laintiff that may have resulted from said struggle were directly caused by [plaintiff's] actions." Doc. 5. Defendants rely on an administration segregation assignment memo in which defendant Allen documented that "while escorting

21

[plaintiff] to G unit force had to be used." Doc. 5, Ex. B.  Defendants claim that although force was used, plaintiff's injuries were not harmful enough to establish a constitutional violation, and taking into account all the relevant circumstances, defendants acted with a good faith motive to restore discipline.  Doc. 5.  It is undisputed that plaintiff suffered a broken arm and a dislocated shoulder, injuries which were treated during an emergency surgery at Memorial Hospital.  Plaintiff's injuries, therefore, were not de minimis, regardless of his initial resistance against defendant Allen's order.  While defendants have posited a version of the facts under which their use of force might not be considered excessive, under plaintiff's version of the facts, a reasonable jury could find otherwise.  Therefore, the question of whether the use of force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm, is an issue of fact for the jury.  See Jackson v. Austin, 2002 WL 975004, *6 (D. Kan. 2002) (citing Street v. Parham, 929 F.2d. 537, 541 n.2 (10th Cir. 1991)) (question of excessive force is a factual inquiry depending on the totality of the circumstances and is properly reserved in most instances for the jury).  Thus, a genuine issue of material fact still exists regarding plaintiff's excessive force claim against defendant Allen, and summary

judgment in favor of this defendant is not appropriate. Defendants' motion for summary judgment as to defendant Allen should be DENIED.

## IV.   CONCLUSION

Based on the foregoing, the Court recommends that defendants' motion for summary judgment be GRANTED as to defendants Thompson, Deal, and Santiago. Defendants' motion for summary judgment should be DENIED as to defendant Allen. Plaintiff's complaint against the John Doe defendants should be DISMISSED.

SO REPORTED AND RECOMMENDED this _12^{th}_ day of March, 2007.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA